## Case No. 15,013.

### UNITED STATES v. DUTCHER.

[7 Int. Rev. Rec. 122; 1 Am. Law T. Rep. U. S. Cts. 60.]

District Court, N. D. Illinois. April, 1868.

INTERNAL REVENUE—RECTIFIER'S BOOKS—NEGLECT TO KEEP.

It is not the intent of the internal revenue law [of 1866; 14 Stat. 98] that rectifiers or distillers shall be furnished with copies of the regulations and requirements thereof.

This was a libel for forfeiture of a rectifying establishment at Amboy, Ill., for neglecting to keep a book as required by the 26th section of the act of July 13, 1866. The claimant's counsel admitted that it was clearly proven to the jury that the book kept did not show all the spirits received and purchased, and sold or delivered; and Hon. Geo. C. Bates, on behalf of the defense, asked the court to charge the jury as follows: That if the jury believed from the evidence adduced that no rules and regulations for the keeping of a rectifier's book were ever prescribed, and furnished to the claimant by the commissioner of internal revenue as are provided for in section 26 of the act of July 13, 1866, they must find for the claimant, even though the books were not kept in accordance with the statute. That if the jury believed from the evidence adduced that the claimant has actually paid the excise tax of $2 per gallon "on every proof gallon so purchased or received by him, or sold or delivered" into the office of collector of that district, so that the United States has not been injured or defrauded in its revenue by the irregular entries in his book, that then they must find for the claimant, as they must be satisfied that his intent and purpose was, by irregular books, to defraud the revenue.

---

## Case No. 15,014.

### UNITED STATES v. DUTCHER.

[2 Biss. 51; 1 8 Int. Rev. Rec. 161; 1 Chi. Leg. News, 57.]

Circuit Court, N. D. Illinois. Oct. Term, 1868.

INTERNAL REVENUE—DISTILLERS' BONDS—PENALTY —MISTAKE OF OFFICER—TAX RATE.

1. The claim of the government under distillers' bonds for the payment of a tax, is not a penalty, nor in the nature of a penalty.

2. A bond given under the act of July 13, 1866 [14 Stat. 163], is not a penalty, but a contract and security, and is not affected by the repealing act of January 11, 1868 [14 Stat. 483], nor are suits or prosecutions instituted upon such a bond abated.

[Distinguished in U. S. v. Singer, Case No. 16,292.]

3. A distiller cannot avail himself of any mistake of the officer in overgauging the spirits. The law is imperative.

4. The tax must be paid at the rate prescribed by the law in force at the time the bonds were given.

Suit upon a distiller's bond given to the United States under the act of July 13, 1866 (14 Stat. 163).

Three cases were submitted to the court under the following state of facts: In November, 1866, the defendant Dutcher, who was a distiller, had certain highwines in a bonded warehouse at Amboy, Ill., and desired to remove them to New York, and thereupon made application to the proper authorities for leave to remove them, and in accordance with the law and practice, he gave bonds under which he was authorized to remove them from Amboy to a bonded warehouse in New York. Prior to their removal, in conformity with law, the highwines were inspected, and on their arrival in New York were again inspected, and it was ascertained that there was a deficiency in the quantity, as compared with what the inspection showed at Amboy, and there being three different bonds given, and a deficiency under each, on the 20th day of May, 1868, suit was brought upon the three separate bonds against Dutcher and the sureties, to recover for the deficiency.

Jesse O. Norton, U. S. Dist. Atty.
George C. Bates, for defendants.

Before DAVIS, Circuit Justice, and DRUMMOND, District Judge.

DRUMMOND, District Judge. Various objections have been made on the part of the

1 [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

defendants, which I will proceed to consider in their order.

In the first place, it is claimed that the law under which these bonds were given, has been repealed by the law of January 11th, 1868 (14 Stat. 483). The law under which the bonds were given, was passed on the 13th of July, 1866. It is claimed that the repeal of the law of 1868 deprived the government of the right to institute suits upon these bonds, and also prevented the government from prosecuting them after suits had been instituted; in other words, that the repeal of the law puts an end to all proceedings connected with these bonds, and all right or claim to sue upon them—and on the ground that this is a penalty—the rule being that unless there is a saving clause all penalties under the law fall with the repeal of the law. This rule is not disputed and is well established. The only question connected with this part of the case is whether this is a penalty. We think it is not. The highwines were in the bonded warehouse at Amboy, for the purpose of securing the government in the payment of the tax. They were permitted to be removed to a bonded warehouse elsewhere (in this instance to New York), upon giving sufficient security. When they arrived at the bonded warehouse in New York, they were held there for the payment of the tax; they were taken out of the custody of the government and given to the owner, in order that they might be transferred, and, of course, the government losing all control of them, the bonds stand as security to the government for the payment of the tax and for nothing else. When the parties executed the bonds, they made a contract with the government, not in the nature of a penalty, but for the purpose simply of paying the tax which was due to the government. The only question is whether the repeal of the law, by the act of January 11th, 1868, which declares that thereafter the tax should be paid before distilled spirits should be removed from a bonded warehouse, destroyed the contract which the parties had previously made with the government for the payment of the tax. This contract was lawful when it was entered into. It was for the payment of a sum that was due to the government, and it is difficult to see how the mere repeal of the law can destroy the contract, and put an end to a right on the part of the government, which was absolute—namely, the payment of the tax. It is not a penalty. It is a sum claimed to be due the government for its support, like any other tax, and is not in the nature of a penalty. But independent of this, the repealing law, it is clear, was not intended to prevent the operation of such contracts as this. By virtue of prior laws the owner of highwines had a right to remove them from a bonded warehouse, upon giving a bond under such regulations as the commissioner of internal revenue might prescribe without the payment of the

tax, and this law merely says that hereafter it cannot be done, but before the removal of the highwines from a bonded warehouse, all taxes must be paid, and then comes in the clause that, "All acts, and parts of acts, inconsistent with the provisions of this act be and are hereby repealed."

The contract that was thus made was not inconsistent with the provision. It was voluntarily entered into by the parties with a view of paying the taxes which were due the government. Therefore, it is clear—and both of us concur in this—as we do in all the conclusions given in deciding these cases—that the repealing law did not destroy the contract entered into between these parties and the government for the payment of the tax.

The next question is whether the parties are bound by the bonds which they have given, in which is stated the quantity of highwines, as by the inspection of the proper authority at Amboy. The evidence of the officer in New York and the officer at Amboy who inspected the highwines has been taken, and it appears from the evidence that the inspector at Amboy certified that the wines were of greater quantity than was the fact; in other words, that he gauged the casks of highwines too high.

The question is, whether the defendants can avail themselves of this difference, on the ground that there was a mistake made in gauging the liquors. We think they cannot. The 40th section of the act of 1866 provides that all distilled spirits which had been inspected, gauged, proved and marked by the inspector, according to the provisions of law, might be removed, without the payment of the taxes, from a bonded warehouse, under such rules and regulations and on such bond or security as the commissioner of internal revenue, subject to the approval of the secretary of the treasury, might prescribe, and that they might be transported to any general bonded warehouse; that after their arrival there they were to be inspected, and that "the tax shall be paid on the difference between the number of proof gallons stated in the bond given at the place of shipment and the number received at the warehouse, less the allowance for leakage as established by the regulations of the commissioner of internal revenue." Observe, the tax shall be paid on the difference between the number of gallons as stated in the bond and the number received at the warehouse less the allowance for leakage, etc., "and, except for actual destruction by unavoidable accident, by the elements or by the public enemy, no other allowance for loss shall be made." Now we think the language of this section imperative, and too explicit to allow us to admit any evidence tending to show that there was a mistake made in the gauging of the liquors, the language of the section being that the tax must be paid on the difference between what the bond states as inspected and the amount as received at the place of

transfer, and that no other allowance shall be made except of a particular character, and the claim here not coming within the exception. That exception, of course, was intended to provide for any destruction without any fault or neglect on the part of the owner in the transit of the property from one bonded warehouse to another, as by fire, by breakage of cars, and everything of that sort. It is a hard rule, undoubtedly, for I am satisfied that there was a mistake made, but it is a mistake that we cannot remedy. They must, therefore, pay over the tax for the difference in the quantity after making all such allowances as the regulations prescribe, and as, after such allowance, there is a deficiency, which is admitted, for that deficiency the defendants are liable upon their bonds.

Another objection has been made, that, conceding the defendants are liable, they are liable only to the extent of sixty cents per gallon, and not for two dollars, as the law then was; and it is claimed that the bond stands in the place of the highwines, and if the wines were in the bonded warehouse in New York, the government could only have now what is the present tax, and could not recover or have what was the tax by the law of 1866. What has become of these highwines we do not know, whether they are there or have been sold, but the theory of the case proceeds upon the ground that the defendant, who owned these highwines, and in whose custody and control they were, has abstracted from the casks, without the payment of the tax, a certain quantity of liquor. Whether he has done so in fact or not, is not material; that is the theory upon which the cases proceed, and, of course, we must take it just as it exists, and decide upon the principle which there is in the cases, and that being so, the defendants must pay the tax which was due under the law in force at the time, namely, two dollars per gallon. However, as I am satisfied that there was a mistake, as I have already said, in the quantity of highwines as certified, it would afford me pleasure. and I have no doubt it will also my brother judge, to certify to the proper authority that the evidence does establish this conclusion, in order that the parties may apply there for a reduction of any sum which may be recovered against them. In this way the defendants may obtain the relief they ask from the court, and which we think the court is not competent to give. I have been told that the commissioner of internal revenue has in some instances taken sixty cents a gallon under similar circumstances. If that has been done, it shows (I understand it is now repudiated) an inconsistency which ought not to exist. But the courts of the country, while treating the decisions of a bureau at Washington with due respect, must decide all legal questions arising before them according to their own views of the law.

Judgment for the United States.